**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Pedro A. Peña, : Case No. 3:10 CV 00344

Plaintiff, :

v. :

City of Toledo, *et. al.*, : **MEMORANDUM DECISION AND ORDER**

Defendants. :

The parties in this action, filed pursuant to 42 U. S. C. § 1983, have agreed to have the undersigned Magistrate Judge conduct all proceedings and order the entry of a final judgment. Pending are Defendants' Motion for Summary Judgment, Plaintiff's Opposition and Defendants' Reply (Docket Nos. 34, 37 & 38). For the reasons that follow, the Motion for Summary Judgment is granted.

## I. JURISDICTION

When a Section 1983 claim alleges a constitutional violation, Title 42 U. S. C. § 1343(3) provides that original jurisdiction lies in the federal district court to redress any deprivation under color of state law. This Court has jurisdiction to redress Plaintiff's claims of violation of his constitutional rights by Toledo

and University of Toledo Police Officers.

## II. THE PARTIES.

Plaintiff was a resident of Adrian Michigan (Docket No. 1, ¶ 3).

Defendant City of Toledo Police Department (TPD) is a municipal corporation and its duties include enforcing the laws designated in the Toledo Municipal Code (Docket No. 1, ¶ 4)

Defendants Todd Miller and Todd Babcock were police officers employed by TPD (Docket No. 1, ¶ 6).

Defendant Dan Protzman was a University of Toledo Police (UTPD) Officer working under the control and supervision of a joint TPD and UTPD unit assigned to patrol the University of Toledo campus and surrounding neighborhoods. He was dismissed as a party on May 14, 2010 (Docket No. 1, ¶ 7 and Docket No. 21).

Defendant UTPD is responsible for enforcing the laws on the University of Toledo and Scott Park Campuses. Defendant UTPD was terminated as a party on May 14, 2010 (Docket No. 1, ¶ 5 and Docket No. 21).

## III. FACTUAL BACKGROUND.

The Omni, a night club located on Bancroft Street in Toledo, Ohio, is in close proximity to the UT campus neighborhood. For a fee, the club provided its patrons with individual suites with amenities such as full bottle service, a waitress and parking. Www.omnimidwest.com.

Plaintiff testified that on February 14, 2009, he, his two brothers Carlos Peña and Alex Peña, and Josh Sarabia arrived at the Omni at approximately 10:30 P. M. (Docket No. 34, Exhibit 6, pp. 22, 44 of 91). Plaintiff had two drinks from the three bottles of liquor provided in his suite (Docket No. 34, Exhibit 6, pp. 26, 33 of 91). Carlos became exceedingly intoxicated and became angry when a patron made an

ethnic slur (Docket No. 34, Exhibit 6, p. 35 of 91). When leaving the bar at approximately 1:55 A.M. on February 15, 2009, Plaintiff and Josh assisted Carlos' exit from the side door of the Omni. Plaintiff left Carlos with Josh and Alex while he went to get his truck (Docket No. 34, Exhibit 6, pp. 44-45 of 91). When he was returning to pick Carlos up, Plaintiff noticed that Carlos had been detained and placed in a police vehicle (Docket No. 34, Exhibit 6, p. 55 of 91). Plaintiff approached the two officers who appeared to be "chilling" with the intention of ascertaining why Carlos was arrested and to give them his brother's identification (Docket No. 34, Exhibit 6, pp. 58, 60 of 91). Before Plaintiff could reach the officers detaining Carlos, he was arrested by UTPD Dan Protzman. Defendant Babcock handcuffed Plaintiff, searched his pockets, pulled out the identification cards and placed him in the "cop car" (Docket No. 34, Exhibit 6, pp. 62 of 91, 65 of 91). Plaintiff was released from jail at 6:00 A.M. the following morning (Docket No. 34, Exhibit 6, p. 81 of 91).

Officer Protzman explained that when business hours ended on February 15, 2009, he and Defendant Babcock were sitting in a vehicle parked in front of the Omni (Docket No. 34, Exhibit 2, pp. 7, 10-11 of 38). Defendant Miller was in another vehicle (Docket No. 34, Exhibit 2, p. 11 of 38). Officer Protzman observed a crowd of approximately five persons approach Defendant Miller while he was arresting Carlos Peña. The crowd was protesting the arrest and/or attempting to interact with Carlos Peña. Using verbal commands, Officer Protzman intervened to control the crowd while Defendant Babcock placed Carlos Peña in the vehicle and remained in the vehicle (Docket No. 34, Exhibit 2, pp. 14-18 of 38). Officer Protzman testified that Plaintiff was intoxicated. He advised Plaintiff that he would be arrested if Plaintiff did not leave. Plaintiff stepped back and returned in an aggressive "sort of way" (Docket No. 34, Exhibit 2, p. 19 of 38). Officer Protzman testified that Plaintiff kept coming at him, swearing and refusing to leave. Officer Protzman claims that he arrested Plaintiff, placed him in handcuffs and escorted

him to the car (Docket No. 34, Exhibit 2, pp. 20, 32 of 38). Defendant Miller prepared the incident report and signed the complaint against Plaintiff (Docket No. 34, Exhibit 2, pp. 31 of 38; Docket No. 34, Exhibit 3, pp. 6, 42-43 of 53; Docket No. 37, Exhibit 1, p. 7 of 55).

Defendant Miller's normal practice was to sit in the Omni lot on busy nights (Docket No. 34, Exhibit 3, p. 22 of 53). On February 15, 2008, he observed Carlos in the parking lot yelling and flailing his arms. Carlos proceeded to punch a car on its hood so Defendant Miller approached and confronted him (Docket No. 34, Exhibit 3, pp. 16-18 of 53). While arresting Carlos, Defendant Miller noticed at least five to six persons in the immediate area who were protesting the arrest and offering to take Carlos home. Plaintiff was in this crowd yelling, using profanity and threatening to take legal action (Docket No. 34, Exhibit 3, pp. 21, 29 of 53). Defendant Miller noticed that Plaintiff was standing next to Officer Protzman with clenched fists (Docket No. 34, Exhibit 3, pp. 37, 38 of 53). Officer Protzman asked Plaintiff to back up three to four times. Plaintiff refused and Officer Protzman arrested him (Docket No. 34, Exhibit 3, p. 38).

## IV. PROCEDURAL BACKGROUND.

Plaintiff was charged with a fourth degree misdemeanor under Toledo Municipal Code § 509.03(b)(1) which prohibits disorderly conduct while intoxicated[1]. *Toledo v. Pena*, 185 Ohio App. 3d 645, 646, 924 N. E. 192, 193 (2010). Plaintiff pleaded not guilty and the case proceeded to a jury trial at the conclusion of which the jury returned a verdict of not guilty. *Id.* The jury was dismissed.

The trial judge amended the complaint to the charge of disorderly conduct, a violation of Toledo

---

[1] Chapter 509 of the Toledo Municipal Code addresses disorderly conduct and peace disturbances in the City of Toledo. Under 509.03(b)(1), no person, while voluntarily intoxicated, shall do the following: "In a public place or in the presence of two or more persons, engage in conduct likely to be offensive or to cause inconvenience, annoyance, or alarm to persons of ordinary sensibilities, which conduct the offender, if the offender were not intoxicated, should know is likely to have that effect on others". Www.amlegal.com.

Municipal Code § 509.03(a)(2), a minor misdemeanor,[2] found Plaintiff guilty of the amended charges and imposed a fine of $150 and court costs. Plaintiff filed a motion to vacate the guilty verdict. *Id.* The court never ruled on the motion and Plaintiff appealed the conviction and sentence to the Court of Appeals of Ohio for the Sixth District. *Id.* The Court of Appeals found that Plaintiff was prejudiced because the lower court improperly convicted him of disorderly conduct which was not a lessor included offense of disorderly conduct intoxication. *Id.* at 647, 925 N. E. 2d at 194. The conviction was vacated and the case was remanded to the Toledo Municipal Court to enter judgment consistent with the jury's verdict. *Id*. at 648, 925 N. E. 2d at 195. On February 16, 2010, Plaintiff filed a claim in federal court pursuant to 42 U. S. C. § 1983 in which he seeks compensatory and punitive damages. All Defendants seek summary judgment. The parties presented oral arguments on August 4, 2011.

### V. MOTION FOR SUMMARY JUDGMENT STANDARD OF REVIEW.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Averill v. Gleaner Life Insurance Society*, 626 F. Supp.2d 756, 761 (N. D. Ohio 2009 (*citing Celotex Corporation v. Catrett*, 106 S. Ct. 2548, 2552 (1986)). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* (*citing Celotex*, 106 S. Ct. at 2552-2553). The burden shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Id*. (*citing Anderson v. Liberty Lobby, Incorporated,*

---

[2] Under Section 509.03(a)(3) of the Toledo Municipal Code, no person shall recklessly cause inconvenience, annoyance, or alarm to another; by insulting, taunting, or challenging another, under circumstances in which that conduct is likely to provoke a violent response. Www.amlegal.com

106 S. Ct. 2505, 2511 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. *Id*. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Id.* (*citing Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 106 S. Ct. 1348, 1355 (1986)). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of concrete evidentiary material in support of its position. *Id.* (*citing Celotex, supra,* 106 S. Ct. at 2553).

In deciding the motion for summary judgment, the evidence of the non-moving party will be believed as true, all doubts will be resolved in favor of the non-moving party, all evidence will be construed in the light most favorable to the non-moving party, and all inferences will be drawn in the non-moving party's favor. *Id.* (*citing Eastman Kodak Company v. Image Technical Services, Incorporated,* 112 S. Ct. 2072, 2076-2077 (1992)). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. *Id.* (*citing Celotex*, *supra,* 106 S. Ct. 2552).

**VI. POSITION OF THE PARTIES.**

In the Complaint, Plaintiff presents five claims:

1. Plaintiff has a prima facie case for malicious prosecution as there was no probable cause for his arrest and Defendants acted out of malice, hatred and ill will.
2. Defendants abused their authority and subjected Plaintiff to arrest for false charges.
3. Defendants deprived Plaintiff of his liberty without lawful justification.
4. Plaintiff was deprived of the rights, privileges and immunities secured by the United States Constitution.
5. Liability attaches to Defendant TPD for the malicious acts of Defendants Miller and Babcock.

In the Motion for Summary Judgment, all Defendants argue that they are entitled to judgment as

a matter of law for the reason that:

1. There is no cognizable malicious prosecution claim.
2. The Sixth Circuit has not recognized a federal-based claim for abuse of process.
3. There was probable cause to arrest Plaintiff so his false arrest claim must be dismissed.
4. The fourth claim is redundant as it reasserts the previously stated claims for redress.
5. Vicarious liability does not attach to Defendant TPD under a Section 1983 analysis.

## VII. SECTION 1983 STANDARD.

The purpose of Section 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *Lausin ex rel. Lausin v. Bishko*, 727 F. Supp.2d 610, 625 (N. D. Ohio 2010) (*see Wyatt v. Cole*, 112 S.Ct. 1827 (1992)). Section 1983 alone does not create substantive rights; rather, it is a vehicle by which plaintiffs can assert claims based upon federal rights created by other statutes. *Id.* (*see Blessing v. Freestone*, 117 S.Ct. 1353, 1359 (1997)).

When establishing liability under Section 1983, a plaintiff must show that the officials, acting under color of state law, caused the deprivation of a federal right. *Id.* at 625-626 (*see Kentucky v. Graham*, 105 S.Ct. 3099, 3105 (1985) (*citing Monroe v. Pape*, 81 S.Ct. 473 (1961)). In other words, the terms of Section 1983 demand only two allegations: (1) that a person deprived the plaintiff of a federal right, constitutional or statutory; and (2) that the person acted under color of state law when depriving the plaintiff of the federal right. *Id.* (*see Gomez v. Toledo*, 100 S.Ct. 1920, 1923 (1980)). If either element is missing, then a Section 1983 claim has not been pleaded. *Id.* (*see Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991)). A municipality may be held liable pursuant to 42 U.S.C. § 1983 if the municipality itself caused the constitutional deprivation. *Id.* (*see Monell v. Department of Social Services*, 98 S.Ct. 2018, 2035 (1978).

## VIII. ANALYSIS.

**1. THE CITY OF TOLEDO POLICE DEPARTMENT.**

Plaintiff alleges that liability attaches to TPD for the acts of its employees, Defendants Miller and Babcock. Defendants contend that vicarious liability does not attach to Defendant TPD through Section 1983.

A municipal police department is not *sui juris* and suits against such entities are construed as brought against the municipality itself, because a judgment against a municipal police department imposes liability on the municipality. *Renz v. Willard Police Department*, 2010 WL 3789563, * (N. D. Ohio 2010) (*see, e.g., Harris v. Sutton*, 183 Ohio App.3d 616, 918 N.E.2d 181 (2009)). Accordingly, the causes of action against Defendant TPD are dismissed as it is incapable of being sued.

**2. MALICIOUS PROSECUTION CLAIM AGAINST DEFENDANTS BABCOCK AND MILLER.**

Plaintiff claims that Defendants Miller and Babcock arrested him, without probable cause, falsified the arrest reports and gave false testimony against him. Plaintiff's argues that proffering false testimony supports a presumption that the prosecution was instituted with malice. Plaintiff argues further that an arrest without probable cause is a violation of the Fourth Amendment. Defendants contend that there is no cognizable malicious prosecution claim.

**a. MALICIOUS PROSECUTION STANDARD.**

A separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment, which "encompasses wrongful investigation, prosecution, conviction, and incarceration is recognized by the Sixth Circuit Court of Appeals. *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (*citing Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006) (internal quotation marks omitted)). The 'tort of malicious prosecution' provides a remedy for the wrongful institution of legal process." *Id.* (*citing Wallace v. Kato*, 127 S.Ct. 1091, 1096 (2007) (internal quotation marks omitted)).

To succeed on a malicious prosecution claim under Section 1983 when the claim is premised on

a violation of the Fourth Amendment, a plaintiff must prove four elements. *Id.* First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute." *Id*. (*citing Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007); *see also McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005); *Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001); *Skousen v. Brighton High School*, 305 F.3d 520, 529 (6th Cir. 2002)). The meaning of the term "participated" should be construed within the context of tort causation principles. *Id.* at 309 fn. 5. Its meaning is akin to "aided." *Id.* To be liable for "participating" in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating. *Id.*

Second, because a Section 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. *Id.* (*citing Fox*, 489 F.3d at 237; *Voyticky v. Village of Timberake, Ohio*, 412 F.3d 669, 675 (6th Cir. 2005)). "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Id.* (*citing United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005) (*quoting United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (en banc)).

"Probable cause determinations involve an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." *Gardenhire v. Schubert*, 205 F. 3d 303, 314 (6th Cir. 2000) (*See Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999)). To determine whether an officer had probable cause to arrest, the court must consider the totality of the circumstances and whether the "facts and circumstances" of which the officer had knowledge at the moment of the arrest were "sufficient to warrant a prudent person ... in believing ... that" the seized individual "ha[d] committed ... an offense." *Id.* (*citing Hinchman v. Moore*, 312 F.3d 198, 204 (6th Cir. 2002) (internal quotation marks omitted). "The belief of guilt must be particularized with respect to the person to be ... seized." *Id.* (*citing United States*

*v. Romero*, 452 F.3d 610, 616 (6th Cir. 2006) (internal quotation marks and alteration omitted). "It is important to recognize that probable cause may exist despite the fact that no crime actually occurred." *Garrett v. Fisher Titus Hospital*, 318 F. Supp.2d 562, 574 (N. D. Ohio 2004) (*citing Doty v. Marquis*, No. 99 JE 9, 2000 WL 1486582, at *2, 2000 Ohio App. LEXIS 4417, at *6 (Ohio App. 7th Dist. Sept. 22, 2000). One need not even have evidence to ensure a conviction. *Id.* (*citing Deoma v. Shaker Heights*, 68 Ohio App.3d 72, 587 N.E.2d 425, 428 (1990) (*citing Epling v. Pacific Intermountain Express Company*, 55 Ohio App.2d 59, 379 N.E.2d 239, 241-42 (1977)).

Third, the plaintiff must show that, "as a consequence of a legal proceeding," the plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. *Id.* at 308-309 (*citing Johnson v. Knorr*, 477 F.3d 75, 81 (3rd Cir. 2007); *see Gregory v. City of Louisville*, 444 F.3d 725, 748-50 (6th Cir. 2006) (discussing the scope of "Fourth Amendment protections . . . beyond an initial seizure," including "continued detention without probable cause"); *cf. Heck v. Humphrey*, 114 S.Ct. 2364, 2371 (1994) (citation omitted).

Fourth, the criminal proceeding must have been resolved in the plaintiff's favor. *Id* (*citing Heck*, 114 S.Ct. at 2371) ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused."). A valid arrest is not automatically attenuated by an acquittal. *Criss v. City of Kent*, 867 F.2d 259 (6th Cir. 1988) (ruling that probable cause to support a valid arrest is not vitiated if the suspect is later acquitted)). A proceeding is 'terminated in favor of the accused' only when its final disposition indicates that the accused is innocent. *Garrett v. Fisher Titus Hospital,* 318 F. Supp.2d 562, 574 (N. D. Ohio 2004) (*citing Ash v. Ash,* 72 Ohio St.3d 520, 651 N.E.2d 945, 947 (1995)).

**b. APPLICABILITY OF THE FACTS TO THE MALICIOUS PROSECUTION ELEMENTS.**

Plaintiff satisfies the first element essential to a claim for malicious prosecution. It is

uncontroverted that the decision to prosecute was predicated on Officer Protzman's arrest of Plaintiff (Docket No. 34, Exhibit 6, pp. 62-64 of 91). Neither Defendant Babcock nor Defendant Miller passively or neutrally participated in the decision to arrest Plaintiff. Defendant Babcock placed Plaintiff in handcuffs, essentially arresting him and Defendant Miller prepared an official report of the incident and signing the complaint (Docket No. 37, Exhibit 1, p. 7 of 55). Defendants Miller and Babcock's actions were sufficient to qualify as either an influence over or participation in the decision to prosecute even though they did not make the ultimate decision.

In the context of the second prong establishing probable cause, Defendants have borne the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Without delving into his intent, Officer Protzman's subjective belief was that Plaintiff was enraged at the detention of his brother. When approaching the officers to determine what happened to his brother, Plaintiff continued to advance despite warnings from Officer Protzman to retreat. As Plaintiff approached the officers, Officer Protzman noticed that he "reeked" of alcohol, slurred his speech and exhibited red, glassy eyes. Plaintiff used profane language while approaching the officers at least twice although he was warned to "move back." Officer Protzman presumed that the "onslaught" of people from the bar had been with Petitioner in the bar. The crowd, coupled with Petitioner's continued persistent advancement toward the officers despite warnings, was perceived as a threat to the officers' safety (Docket No. 37, Exhibit 1, pp. 19-24 of 55, Exhibit 4, pp. 32-36, 55 of 125). Defendant Miller affirmed that when arrested, Plaintiff continued the tirade, cursing and objecting loudly to his arrest (Docket No 34, Exhibit 4, pp. 9, 11 of 125; Docket No. 31, Exhibit 4, p. 64 of 125).

At the third prong, Plaintiff suffered a deprivation of liberty when arrested. At the fourth and final

prong requiring resolution of the criminal proceedings in the defendant's favor, Plaintiff was acquitted after a jury trial. The acquittal was affirmed on appeal, thus satisfying the final prong of the malicious prosecution test.

When the burden shifted, Plaintiff attempted to satisfy his burden by arguing that there is evidence in the record that demonstrates that Defendants did not have probable cause to arrest him. First, Plaintiff claims that during a three-hour period, he consumed three alcoholic beverages; thus, he was not intoxicated (Docket No. 34, Exhibit 6, pp. 24-26 of 91). Second, Plaintiff argues that he was arrested for simply walking toward the vehicle and that Defendants lied when they claimed that Plaintiff advanced toward them while Defendant Miller was making the arrest of Carlos Peña. Plaintiff claims further that he was in his truck when the arrest was effectuated (Docket No. 37, Exhibit 1, p. 4 of 55). Third, Defendant exaggerated the size of the group protesting Carlos Peña's arrest. There were only three persons interested in Carlos Peña's plight–Plaintiff, Josh Sarabia and Alexander Peña (Docket No. 34, Exhibit 6, p. 44 of 91). Fourth, the jury failed to find Defendants' testimony credible. Fifth, Alexander Peña averred that Plaintiff was arrested for walking toward the police vehicle in which Carlos had been detained (Docket No. 37, Exhibit 1, p. 2 of 55).

Applying these facts and resolving all doubts in Plaintiff's favor, Officer Protzman and Defendants Miller and Babcock had reasonably trustworthy facts and circumstances that were sufficient to warrant a belief that Plaintiff had or was about to commit an offense in violation of the municipal ordinance. Plaintiff's assertions do not controvert the good faith beliefs that Defendants Babcock and Miller had probable cause to make the arrest and/or institute criminal proceedings against Plaintiff. Defendants are entitled to judgment as a matter of law on Plaintiff's malicious prosecution claim.

**3. ABUSE OF PROCESS CLAIM AGAINST DEFENDANTS BABCOCK AND MILLER.**

Applying these principles, Plaintiff argues that Defendants Babcock and Miller abused their authority and subjected Plaintiff to an arrest based on false charges of disorderly conduct by intoxication. The institution of the charges against Plaintiff was precipitated by malice and a thirst for police power.

**a. ABUSE OF PROCESS STANDARD.**

Abuse of process occurs where someone attempts to achieve through use of the court that which he is himself powerless to order. *Nerswick v. CSX Transp., Incorporated*, 692 F. Supp.2d 866, 883 (S. D. Ohio 2010) (*citing Robb v. Chagrin Lagoons Yacht Club, Incorporated*, 75 Ohio St.3d 264, 271, 662 N.E.2d 9, 14 (1996)). Unlike the tort of malicious prosecution, which provides a remedy when a proceeding is instituted without probable cause, the tort of abuse of process provides a remedy where a "legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed." *Id.* (*citing Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294, 297, 626 N.E.2d 115, 118 (1994) (*citing* PROSSER & KEETON, THE LAW OF TORTS 897, § 121 (5th ed. 1984)). Such a situation arises when there is an "act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process . . . " *Id.* at 298, 626 N.E.2d 115 (*citing* PROSSER at 898).

To establish a claim for abuse of process under Ohio law, a plaintiff must demonstrate that (1) a legal proceeding has been set in motion in proper form and with probable cause; (2) the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) direct damage has resulted from the wrongful use of process. *Schwartz v. City of Conneaut, Ohio*, 2009 WL 4730594, *6 (N. D. Ohio 2009) (*citing Magnum Towing & Recovery v. City of Toledo*, 287 Fed. Appx. 442 (6th Cir. 2008) (*quoting Yaklevich v. Kemp, Schaeffer & Rowe Company, L.P.A.*, 68 Ohio St.3d 294, 626 N.E.2d 115, 118 (1994); *see also Robb v. Chagrin Lagoons Yacht Club, Incorporated*, 75 Ohio St.3d 264, 662 N.E.2d 9, 14 (1996) ("[T]he improper purpose usually takes the form of coercion to obtain a

collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club.") (internal quotation marks omitted) No liability for abuse of process lies "where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Nerswick, supra,* 692 F. Supp. 2d at 883 (*citing Yaklevich*, *supra*, 68 Ohio St.3d at 298 n. 2, 626 N.E.2d at 118).

**b. APPLICABILITY OF FACTS TO ABUSE OF PROCESS STANDARD.**

Here, there is no dispute that Defendants set a legal proceeding in motion. However, Plaintiff has failed to go beyond the unverified pleadings and present some type of concrete evidentiary material that creates a causal link between the Defendants Babcock and/or Miller's thirst for police power and how the process was perverted for purposes of quenching that thirst. To the extent that Plaintiff is alleging an abuse of process claim, the Magistrate concludes that such claim must be dismissed as the allegation is conclusory.

**4. FALSE ARREST CLAIMS AGAINST DEFENDANTS BABCOCK AND MILLER.**

Plaintiff's third claim that he was subjected to the loss of liberty without lawful justification is a claim for false arrest. Defendants contend that they had probable cause to arrest so his claim for false arrest must be dismissed.

**a. STANDARD FOR FALSE ARREST.**

A claim for false arrest is proper when an individual is arrested without legal process or under a void process. *Carrasquillo v. City of Cleveland*, 2011 WL 3841995, *5 (N. D. Ohio 2011). Claims of false arrest and false imprisonment require proof of an intentional detention and the unlawfulness of the intention. *O'Brien v. Navarre*, 2011 WL 2712527, *2 (N. D. Ohio 2011) (*citing Frazier v. Clinton County Sheriff's Office*, 2008 WL 4964322, *22 (2008)). To prevail on a false-arrest claim, a plaintiff must show

that defendants "participated in an illegal and unjustified arrest, and that [the defendants] lacked probable cause to do so." *Bletz v. Gribble*, 641 F.3d 743, 758 (6th Cir. 2011) (*citing Walsh v. Taylor*, 263 Mich. App. 618, 689 N.W.2d 506, 513 (2004)).

**b. APPLICABILITY OF THE FACTS TO THE FALSE ARREST STANDARD.**

The essence of the false arrest claim against Defendants Babcock and Miller is that the arrest was made without probable cause. The Magistrate has already determined that probable cause existed for the arrest. Thus, Plaintiff's false arrest claim must fail.

**5. DEPRIVATION OF HIS RIGHTS, PRIVILEGES AND IMMUNITIES SECURED UNDER THE UNITED STATES CONSTITUTION.**

Plaintiff's fourth claim against Defendants Babcock and Miller is based upon alleged violations of "rights, privileges and immunities." This claim can be interpreted in two ways. First, Plaintiff is seeking redress under the language of Section 1983: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state subjects any citizen of the United States to the deprivation of any *rights, privileges, or immunities* secured by the Constitution." Second, Plaintiff is asserting a claim under the privileges and immunities clause of the Fourteenth Amendment.

Section 1983 does not create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere. Plaintiff has not asserted a cognizable claim under Section 1983.

Under the privileges and immunities clause of the Fourteenth Amendment, no person or state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States. The plain language of this clause requires Plaintiff to assert a challenge to a state law or the enforcement of a state law which allegedly abridged his or her rights to certain privileges and immunities. Plaintiff

challenges the conduct of certain officials not the use of state law itself. Relief under the privileges and immunities clause is not cognizable.

**6. DEFENDANTS BABCOCK AND MILLER'S QUALIFIED IMMUNITY CLAIMS.**

In their Answer, Defendants Babcock and Miller claim that they are entitled to qualified immunity.

**a. QUALIFIED IMMUNITY UNDER OHIO REV. CODE § 2744.**

Under OHIO REV. CODE § 2744.03(A)(6), immunity applies unless defendants are shown to have acted outside the scope of their employment or official responsibilities or acted with malicious purpose, in bad faith, or in a wanton or reckless manner. "Malice" is the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified. *Van Hull v. Marriott Courtyard*, 87 F. Supp. 2d 771, 777 (N. D. Ohio 2000) (*citing Cook v. Cincinnati*, 103 Ohio App.3d at 90, 658 N.E.2d 814 (*citing Jackson v. Butler County Board of Commissioners*, 76 Ohio App.3d 448, 602 N.E.2d 363 (1991)). "Bad faith" involves a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another. *Id*. Wanton misconduct is the failure to exercise any care whatsoever. *Id.* (*citing Fabrey v. McDonald Police Department*, 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994) (*citing Hawkins v. Ivy*, 50 Ohio St.2d 114, 116-18, 363 N.E.2d 367 (1977)). "Mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor." *Id.* (*citing Roszman v. Sammett*, 26 Ohio St.2d 94, 96-97, 269 N.E.2d 420 (1971)). Such perversity must be under such conditions that the actor must be conscious that his conduct will, in all likelihood, result in an injury. *Id*.

In the instant case, Plaintiff has not offered evidence that Defendants Babcock and Miller acted outside the scope of their official responsibilities. Neither has Plaintiff presented prima facie evidence

that the use of handcuffs or the preparation of a police report were done as part of a willful and intentional design to injure or harm Plaintiff. Plaintiff alleges but did not prove that Defendants Babcock and Miller were hungry for police power; consequently, he has not demonstrated that Defendants Babcock and Miller acted in bad faith. Finally, Plaintiff has not demonstrated that Defendants Babcock and Miller's acts lacked any care whatsoever. Defendants Babcock and Miller are entitled to qualified immunity on the issues of malicious prosecution and false arrest.

**b. QUALIFIED IMMUNITY.**

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (*citing Harlow v. Fitzgerald*, 102 S.Ct. 2727, 2738 (1982)). "The central purpose of affording public officials qualified immunity from suit is to protect them 'from undue interference with their duties and from potentially disabling threats of liability.' " *Id*. at 374-375 (*citing Elder v. Holloway*, 114 S.Ct. 1019, 1022-1023 (1994) (*quoting Harlow*, 102 S.Ct. at 2731-2732). A three pronged procedure is used to evaluate claims of qualified immunity. First, the court must determine whether a constitutional violation occurred; second, the court must determine whether the right that was violated was a clearly established right of which a reasonable person would have known; and finally, the court must determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Id.* (*citing Williams v. Mehra*, 186 F. 3d 685, 691 (6th Cir. 1999) (*citing Dickerson v. McClellan*, 101 F.3d 1151, 1157-1158 (6th Cir. 1996)).

The first step in our inquiry, then, is to consider the "threshold question" whether, "[t]aken in the

light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* (*citing Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* If a violation could be made out on a favorable view of the parties' submissions, however, the court must then consider whether the right was "clearly established." *Id.* "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id*. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. Finally, and only if these first two elements are satisfied, this Court "occasionally" has gone on to determine " 'whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.' " *Id.* (*citing Drogosch v. Metcalf*, 557 F.3d 372, 378 (6th Cir. 2009) (*quoting Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 n. 2 (6th Cir. 2005)). Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that officials are not entitled to qualified immunity. *Id*. (*Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) (*citing Barrett v. Steubenville City Schools*, 388 F.3d 967, 970 (6th Cir. 2004) *cert. denied*, 126 S. Ct. 334 (2005)).

In the instant case, Plaintiff had a clearly established right to be free of an arrest that was not based on probable cause. Since Defendants Babcock and Miller had probable cause to arrest Plaintiff, no constitutional right was violated. Defendants Miller and Babcock are entitled to qualified immunity.

## IX. CONCLUSION

For these reasons, the Motion for Summary Judgment is granted and the case is dismissed.

**IT IS SO ORDERED.**

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date: September 29, 2011